UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LEO E. GREEN

                      Plaintiff,        12-CV-6387T

                                        **DECISION**
             v.                            **and ORDER**

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY[1]

                      Defendant.

---

**INTRODUCTION**

    Represented by counsel, Leo E. Green ("Plaintiff" or "Green"), brings this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for Disability Insurance Benefits ("DIB"). The Court has jurisdiction over this action pursuant to 42 U.S.C. 405(g).

    Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with the applicable legal standards. Therefore, this Court hereby grants

---

[1] This action was filed on July 20, 2012. Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin, or "the Commissioner," is the defendant in this suit.

the Commissioner's motion for judgment on the pleadings and denies Plaintiff's motion.

## PROCEDURAL HISTORY

On December 29, 2009, Green protectively filed an application for DIB, claiming that he was disabled beginning on May 15, 2008, due to back, shoulder and leg problems, occasional numbness in his hands, as well as a learning disability. Administrative Transcript ("Tr.") at 132, 143, 148, 196. Green's claim was initially denied on February 24, 2010. Tr. at 58-69. At his request, Green, represented by attorney Michael Ranieri, testified at an administrative hearing on November 17, 2010 in Corning, New York, before Administrative Law Judge ("ALJ") John P. Ramos. Tr. at 24-54.

On December 23, 2010, the ALJ issued a decision finding that Green was not disabled during the period alleged. Tr. at 19. On May 24, 2012, the Appeals Council denied Plaintiff's request for review, making ALJ Ramos' decision the Commissioner's final decision. Tr. at 1-4. This action was filed on July 20, 2012.

## FACTUAL BACKGROUND

At the time of the hearing, Green was 46 years old with a high school education. His past relevant work was as a car wash attendant, factory assembly and quality control worker. Tr. at 157. Green claims he became disabled on May 15, 2008, due to arthritis, back, shoulder, leg and feet pain, as well as neck pain

that radiates throughout his arms and legs, causing numbness that renders him unable to work.  Tr. at 148.

Individualized Education Program ("IEP") reports from Plaintiff's 1982-1983 school year indicate that Green was a special education student due to information processing deficits.  Tr. at 51, 389-403.  He had problems with reading and writing and required the assistance of a tutor to graduate from high school.  On November 3, 1982, Plaintiff's school psychologist at Wheatfield-Chili High School, Susan Howard, completed a psychological evaluation of Plaintiff.  Tr. at 405-406.  Plaintiff had a full scale IQ score of 83, placing him, according to Ms. Howard, in the low average range of intelligence.  Tr. at 404.

Plaintiff moved to Florida.  Then, on September 25, 1998, while driving an automobile and stopped at a red light, he was rear-ended by a pickup truck.  Tr. at 249-259.  As a result of the automobile accident, Green was taken to Northside Hospital and Heart Institute in St. Petersburg, Florida where x-rays were taken of his cervical spine and lumbosacral spine which appeared to be normal.  Tr. at 253.

On October 5, 1998, Plaintiff presented at ChiroMed Chiropractic Center with complaints of headaches, as well as pain and stiffness in the neck and low back due to the car accident. Tr. at 249, 260. Upon examination, David M. Wieland, D.C. (Doctor of Chiropractic), found that there was "considerable spasm and

exquisite tenderness to palpitation" of muscles in the cervical spine and upper extremities, as well as restricted range of motion of Green's cervical spine.  The ranges of motion in the upper extremities were normal.  Dr. Wieland diagnosed post-traumatic headaches, soft tissue injury of Plaintiff's cervical spine, thoracic spine, and lumbar spine, secondary joint dysfunction, back pain with lumbar nerve root irritation, myofascial pain and possible cervical and lumbar disc injury.  Tr. at 262.

On October 12, 1998, Richard Leverone, D.C., examined a magnetic resonance imaging ("MRI") of Green's cervical spine, observing minimal degenerative change, including minimal disc height narrowing at C5-6.  Tr. at 240-243.  There were alignment abnormalities, such as "significant reduction of hyperextension and hyperflexion and minimal scoliosis."  Tr. at 242.

Plaintiff subsequently underwent daily chiropractic treatment at the ChiroMed Chiropractic Center in Tampa, Florida, including spinal mobilization and physiotherapy, which he tolerated well.  Tr. at 263-275.  On October 23, 1998, an MRI of Plaintiff's cervical spine from Rocky Mountain Chiropractic Radiological Center revealed arthrosis at C5-6 without neurologic compression, posterior bulging at C6-7, reversed cervical lordosis, and no evidence of disc herniation or spinal stenosis.  Tr. at 416.  Dr. Wieland, D.C. authorized Green to return to full time work on

October 26, 1998 with no restrictions or limitations. Tr. at 246. Dr. Wieland continued to treat Green with chiropractic adjustments from October 6, 1998 through February 2, 1999. Tr. at 263-304. Plaintiff consistently complained of headaches and pain in the neck, mid and lower back.

On three occasions during November, 1998 to January, 1999, neurologist Shrinath S. Kamat, M.D. at Diplomate, American Board of Psychiatry and Neurology, Inc., examined Plaintiff. Tr. at 417-420, 424-425, 432-433, 434-436. Dr. Kamat found normal (5/5) muscle strength in all extremities except for the left hand, where muscle strength was slightly decreased, and there was decreased sensation in the left arm. There was tenderness in the cervical and lumbar spine and decreased range of motion. Dr. Kamat diagnosed post-traumatic headaches, pain in the left arm, cervical, lumbosacral and midthoracic sprain due to the car accident.

On March 3, 1999, Dr. Kamat noted that Plaintiff reported 70-75% improvement of his overall condition with the complete resolution of his low and mid back pain and decreased intensity of pain around his neck and left shoulder. Tr. at 434-436. Lifting, carrying, pushing, and pulling exacerbated Plaintiff's stiffness around the neck and left shoulder. He had difficulty lifting over 50 pounds. Dr. Kamat opined that Green had lost 8% of his whole person as a result of the injuries he sustained in the automobile

accident and had reached maximum medical improvement for his condition, considering he was not a surgical candidate.

On June 23, 2001, an MRI of Green's cervical spine showed joint hypertrophy; congenitally narrowed spinal canal from C3-4 through C5-6; and cervical lymphadenopathy. Tr. at 320. Green was referred to an orthopedic physician, Roberto Dominguez, M.D., at the Florida Knee and Orthopedic Center in Clearwater, Florida. Tr. at 305-308. On July 10, 2001, he presented with neck and low back pain that, he claimed, radiated, and he denied numbness or tingling in his upper and lower extremities. Dr. Dominguez examined Plaintiff, observing diffused stiffness in the cervical spine. The ranges of motion in the cervical spine and lumbosacral spine were within functional limits. Dr. Dominguez opined that Plaintiff had congenital cervical spinal stenosis, acute exacerbation of the cervical sprain, and lumbar sprain. He recommended physical therapy and a short course of oral steroids. On August 15, 2001, Dr. Dominguez conducted electrical studies on Plaintiff, finding no electrical evidence of carpal tunnel syndrome or ulnar entrapment neuropathy.

On December 7, 2001, a pain management specialist, Kazi Hassan, M.D., examined Plaintiff. Tr. at 317. Green complained of chronic neck, left upper extremity, and low back pain ongoing for three years. He denied radiating pain or numbness in his lower extremities. His spasms and pain were treated with Flexeril and

Naproxen. Dr. Hassan diagnosed chronic neck and low back pain, cervical radiculopathy and cervical and lumbar facet arthropathy. Tr. at 327-328. Dr. Hassan recommended a series of cervical epidural steroid injections and cervical facet injections which he administered to Plaintiff's neck on March 21 and 28, and April 4, 2001. Tr. at 459-461.

Radiology Reports dated February 17 and April 18, 2003, from Westcoast Radiology in Clearwater, Florida, reveal that there was no fracture, abnormality, or significant degenerative findings in Plaintiff's left hip, right hand and wrist, despite his complaints of pain. Tr. at 331-332.

Plaintiff alleges that he became disabled on May 15, 2008; however, there is no medical evidence in the record from that time period.

Throughout 2009, Plaintiff explored different methods of conservative treatment to relieve his pain. From February 1, 2009 to January 31, 2010, Green participated in a research study titled "Conservative Care for Chronic Lower Back Pain" at New York Chiropractic College. Tr. at 361-370. John M. Ventura, D.C. at the Rochester Chiropractic Group, treated Plaintiff with chiropractic adjustments from November 13, 2009 through December 23, 2009. Tr. at 333-360. Plaintiff complained of pain in the lumbar area. Specifically, he complained that excessive

work and activity caused his back pain to flare up, and that excessive standing or prolonged sitting caused leg numbness. Tr. at 359. Dr. Ventura found that Plaintiff was mildly restricted in the lower back area and lumbar spine flexion and rotation was moderately decreased. He diagnosed somatic dysfunction of the lumbar and thoracic regions, and lumbosacral neuritis. Tr. at 345, 347, 349, 351, 353, 355, 357, 360. He recommended heat for pain relief and stretching exercises.

In an orthopedic consultative examination dated February 12, 2010, Sandra Boehlert, M.D., found that Plaintiff had a normal gait and station, and was able to rise from his chair without difficulty. Tr. at 371-375. He did not use an assistive device. He could walk on his heels and toes. Plaintiff's fine motor activity of his hands was normal. There was tenderness and limited rotation in the area of his cervical, thoracic, and lumbar spine. Green had full range of motion and strength in his lower extremities, and limitation of shoulder motion in his upper extremities. Plaintiff's prognosis was fair. In a medical source statement, Dr. Boehlert opined that Plaintiff had "moderate limitation to repetitive bending, twisting, or repetitive heavy exertion of pushing or pulling." Tr. at 373. X-ray reports dated February 17, 2010 revealed that the vertebral bones of the lumbosacral spine appeared normal, and there was degenerative

spondylosis of the cervical spine at C3-C4 and C5-C6 with no compression fracture.

On May 11, 2010, Green was transferred to the care of Martha Yanda, R.PAC. (Registered Physician Assistant - Certified) and Geoffrey Wittig, M.D., at the Tri-County Family Medicine facility in Dansville, New York. Tr. at 522. Physician Assistant ("PA") Yanda initially examined Plaintiff and observed a narrowing of the spinal canal and three pinched nerves. Tr. at 485-494. She prescribed Naproxen for inflammatory issues and Flexeril as a muscle relaxant for Green's shoulder and neck pain. On May 20, 2010, PA Yanda examined Plaintiff and found normal range of motion of the left shoulder. Green reported that his neck pain had significantly improved, he had normal range of motion in his neck and no longer had any numbness in his hands. On September 20, 2010, PA Yanda again examined Plaintiff and he reported that he walked 45 minutes per day for exercise and continued taking Naproxen and Flexeril, as well as Lipitor for his elevated cholesterol.

On October 12, 2010, PA Yanda and Dr. Wittig co-signed a Residual Functional Capacity Assessment of Plaintiff's lumbar spine (Tr. at 522-526) in which they opined that Plaintiff's chronic low back pain and myalgias rendered him incapable of sustaining full-time work. They reported that upon examination, Plaintiff could

sit for 30 to 45 minutes at a time, and he could stand for one hour at a time. Their report also stated that Plaintiff would need to shift positions and take breaks in an eight-hour work day; however, they did not assess what amount of time Green could sit or stand/walk. They estimated that he could lift 20 pounds.

At the hearing before ALJ Ramos on November 17, 2010, Green testified that back and shoulder pain as well as stiffness prevented him from performing work at an adequate pace in order to maintain a job. Tr. at 30. He also stated that he could only stand for an hour and a half before leg and back pain would require him to sit, but he could sit comfortably for 45 minutes before having to stand up or move. He "tr[ied] to walk every day [for exercise]... for maybe four to five minutes and then [would] sit down at a bench for a little bit and then [] get up and try it again." Tr. at 34. He "prepare[d] food for [his] father... and ma[de] sure he [got] his medicine and tr[ied] to straighten up around the house," vacuumed, handled money, bathed and dressed himself, worked on jigsaw puzzles and watched television. Tr. at 35-37, 181. He would occasionally drive 30 miles to church and from his sister's house to his uncle's house. He would also drive his father to doctor's appointments, typically a 45-minute drive. Tr. at 41.

He testified that the body twisting required by assembly line work would cause extreme stiffness. Since 1998, he claimed, he

would often wake up during the night due to sharp back pains. Tr. at 38-39. He had migraine headaches but was not prescribed any medications for them. Tr. at 40. He testified that one of his medications, Flexeril, caused drowsiness. Tr. at 43.

**DISCUSSION**

**I. Scope of Review**

When reviewing an appeal of the Social Security Administration's denial of a claimant's application for benefits, Title 42 U.S.C., Section 405(g) directs the Court to accept the Commissioner's factual findings, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Consolidated Edison Co. V. NLRB</u>, 305 U.S. 197, 229 (1938). The Court's scope of review is limited to determining whether the Commissioner's findings were supported by substantial evidence in the record, and whether the Commissioner employed the proper legal standards in evaluating the plaintiff's claim. <u>Mongeur v. Heckler</u>, 722 F.2d 1033, 1038 (2d Cir. 1983).

Judgment on the pleadings pursuant to Rule 12(c) may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the content of the pleadings. <u>Sellers v. M.C. Floor Crafters, Inc.</u>, 842 F.2d 639 (2d Cir. 1988). If, after reviewing the record, the Court is

convinced that Plaintiff has not set forth a plausible claim for relief, judgment on the pleadings may be appropriate. See generally Bell Atlantic Corp. V. Twombly, 550 U.S. 544, 555 (2007)("Factual allegations must be enough to raise a right to relief above the speculative level.").

**II.  The Commissioner's Decision to Deny the Plaintiff benefits is Supported by Substantial Evidence in the Record**

An individual's physical or mental impairment is not disabling under the Act unless it is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1383(a)(3)(B). Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). In his decision denying benefits, the ALJ adhered to the five-step analysis required to evaluate disability claims.[2]  Tr. at 12-19.

Under step 1 of the process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset

---

[2] The five-step analysis requires the ALJ to consider the following: (1) whether the claimant is performing substantial gainful activity; (2) if not, whether the claimant has a severe impairment which significantly limits his or her physical or mental ability to do basic work activities; (3) if the claimant suffers severe impairment(s), the ALJ considers whether the claimant has impairment(s) that lasted or expected to last for a continuous period of at least twelve months, and impairment(s) meets or medically equals a listed impairment in Appendix 1, Subpart P, Regulation No. 4; if so, the claimant is presumed disabled; (4) if not, the ALJ considers whether impairment(s) prevents the claimant from doing past relevant work; (5) if the claimant's impairment(s) prevents him or her from doing past relevant work, if other work exists in significant numbers in the national economy that accommodates the claimant's residual functional capacity and vocational factors, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v).

date of disability. Tr. at 14. At steps 2 and 3, the ALJ concluded that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar and cervical spine and cervical whiplash injury. Id. The ALJ found, however, that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in Appendix 1, Subpart P of the Social Security Administration's regulations. Tr. at 15.

At steps 4 and 5, the ALJ concluded that although Plaintiff was unable to perform his past relevant work, he retained the residual functional capacity ("RFC") to perform a full range of sedentary work. Tr. at 16-18. Considering his age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. Tr. at 18.

Green argues that the ALJ's decision finding that he is not disabled was against the weight of substantial evidence and erroneous as a matter of law. Specifically, Plaintiff maintains that the ALJ failed to afford controlling weight to the opinion of PA Yanda and Dr. Wittig regarding Plaintiff's functional limitations; that the ALJ should have consulted a Vocational Expert; and that the ALJ's assessment of Plaintiff's credibility was not supported by substantial evidence. See Plaintiff's Memorandum of Law ("Pl's Mem."), Points 1-3 (Dkt. No. 9).

## A. The ALJ's Residual Functional Capacity Finding is Supported by Substantial Evidence in the Record

In order to make a proper disability finding, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. § 404.4545(a)(3)-(4); see also SSR 96-8p, SSR LEXIS 5, 1996 WL 374184 (S.S.A. July 2, 1996). Here, the ALJ found that Plaintiff retained the RFC to perform the full range of sedentary work,[3] including the RFC to "occasionally lift and/or carry 10 pounds; frequently lift and/or carry less than 10 pounds; stand and/or walk at least two hours out of an eight hour workday; sit for about six hours out of an eight hour workday; and occasionally climb (ramps/stairs), balance, stoop, kneel, crouch, and crawl." Tr. at 16.

The ALJ relied on evaluations from examining consultative orthopedic physician Dr. Boehlert, attending physicians at Northside Hospital and Heart Institute, and treating chiropractors at ChiroMed Chiropractic Center (Drs. Wieland and Leverone), all of whom addressed the Plaintiff's symptoms and functional limitations.

---

[3] The regulations define sedentary work as a job "which involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a). A job is also categorized as "sedentary work" if it "involves sitting" and "walking and standing is often necessary in carrying out job duties." Id.

Tr. at 16-18. The ALJ also gave limited weight to PA Yanda and Dr. Wittig's evaluations. Tr. at 18.

The medical evidence in the complete record consistently supported Dr. Boehlert's February 2010 opinion that Plaintiff's prognosis was fair, despite his moderate limitations with repetitive bending, twisting, or heavy exertion of pushing or pulling, which do not preclude the full range of sedentary work. Tr. at 373.

X-ray reports dated February 17, 2010 revealed that the vertebral bones of the lumbosacral spine appeared normal and there was degenerative spondylosis of the cervical spine at C3-C4 and C5-C6 with no compression fracture. In May 2010, PA Yanda examined Plaintiff, finding that Plaintiff's shoulder and neck symptoms improved significantly with pain medication. Tr. at 485-494. Green also reported at that examination that there was no longer any numbness in his hands. On September 20, 2010, Plaintiff reported walking 45 minutes daily for exercise. Plaintiff testified that he drove for 45 minute trips and could sit comfortably for 45 minutes before having to stand up or move. Tr. at 34.

PA Yanda and Dr. Wittig, whose examinations the ALJ referred to in his decision, observed that Green could frequently and occasionally lift and carry up to 20 pounds. The ALJ gave some weight to these strength limitations in limiting him to lifting less weight. Tr. at 18. See 20 C.F.R. §§ 404.1567(a). He also

considered PA Yanda's findings of Green's symptomatic improvement with medication, as well as Green's testimony regarding his capability to engage in activities of daily living. Tr. at 17-18.

Plaintiff argues that there was insufficient evidence in the record for the ALJ to make a finding of Green's RFC because he failed to give controlling weight to PA Yanda and Dr. Wittig's October 2010 assessment of Green's functional limitations. Pl's Mem. at 8-11. However, it is within the ALJ's province to give limited weight to their findings because he explicitly found that "they did not treat the claimant over a long period of time and their findings were not consistent with the rest of the medical evidence." Tr. at 18; see 20 C.F.R. § 404.1527(d); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000)(holding that when the treating physician's opinion is not given controlling weight, the ALJ must consider: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." ).

I find that the ALJ sufficiently explained why he assigned limited weight to the Plaintiff's disability assessment by PA Yanda and Dr. Wittig because their conclusory statement of disability in their RFC assessment was inconsistent with Dr. Boehlert's assessment and PA Yanda's own findings and the evidence contained

in the complete record, including Plaintiff's testimony. Tr. at 16-18

**B.    The Commissioner Did Not Err in Failing to Consult a Vocational Expert**

Plaintiff argues that the ALJ failed in not obtaining testimony from a Vocational Expert regarding Plaintiff's nonexertional limitations. Pl's Mem. at 11-12. Therefore, he argues that it was improper for the ALJ to use the Medical-Vocational guidelines in determining whether there was work that Green could perform in the national economy. Id.

The ALJ found that Plaintiff retained the RFC to perform the full range of sedentary work. Tr. at 16-18. Generally, the Court will find that the testimony of a vocational expert is only necessary when the claimant's nonexertional impairments significantly diminish his ability to work. See Bapp v. Bowen, 802 F.2d 601, 603 (2d Cir. 1986). Here, the ALJ considered Green's testimony regarding alleged bouts of drowsiness and insomnia caused by his medication but found that Green should be able to perform sedentary work.

Furthermore, the ALJ did not assign weight to the sources claiming that Plaintiff had additional mild mental limitations, or nonexertional limitations. Tr. at 17-18. The ALJ properly assigned limited weight to PA Yanda and Dr. Wittig's assessment of Green, choosing not to credit their estimation that his pain was

severe enough to constantly interfere with attention and concentration needed to perform simple work tasks. Tr. at 18; §§ 404.1545(a)(5)(ii).

Because the ALJ had found that the Plaintiff's RFC to perform a full range of sedentary work was not significantly limited by nonexertional limitations, and because this Court finds the ALJ's RFC assessment to be sufficient and proper, the ALJ did not err in applying the Medical-Vocational Guidelines set forth in 20 C.F.R. Part 404, Subpart P, Appendix 2.

**C. The ALJ Properly Assessed Plaintiff's Credibility**

The ALJ found that Green's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent that they were not supported by the objective medical record, and were inconsistent with the RFC assessment. Tr. at 16-17. The ALJ "has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment...[which he must do] in light of medical findings and other evidence regarding the true extent of the pain alleged by the claimant." Mimms v. Heckler, 750 F.2d 180, 186 (2d Cir. 1984) (citation omitted). The ALJ thus is not obligated to accept a claimant's testimony about his limitations without question. Id.

Plaintiff contends that the ALJ's credibility finding was

improper because the ALJ found that the statements were inconsistent with his own RFC determination. Pl's Mem. at 12-13. However, this Court finds that the ALJ's credibility assessment was proper and consistent with the record as a whole.

Here, the ALJ explicitly stated that he reviewed all of Plaintiff's subjective complaints. Tr. at 16. He properly considered Plaintiff's performance of activities of daily living and the discrepancy between Green's alleged symptoms and the medical evidence in the record. Tr. at 16-18.

In particular, the ALJ noted that Plaintiff testified that not only could he participate independently in most activities of daily living such as driving, vacuuming, handling money, bathing and dressing himself, but also he was capable of assisting his father and would drive his father to doctor's appointments 45 minutes away. Tr. at 35-37, 41, 181.

The ALJ took into consideration Plaintiff's subjective complaints in determining that his allegations of pain did not render him unable to perform sedentary work. Tr. at 16-19. The ALJ did not discount Plaintiff's subjective complaints entirely but only to the extent that the Plaintiff's complaints were inconsistent with the substantial evidence in the entire record.

The ALJ determined that Plaintiff was able to perform sedentary work, and considered Plaintiff's testimony that the body twisting required by assembly line work would cause him extreme

stiffness. Tr. at 43.

Accordingly, Plaintiff's argument that the ALJ failed to properly assess his subjective complaints is rejected. See Cruz v. Astrue, No. 12-0953, 2013 WL 1749364, *14 (S.D.N.Y. Apr. 24, 2013)(credibility analysis is complete where the ALJ found that claimant's alleged symptoms were "inconsistent with the above residual functional capacity," and where ALJ provided a basis for this finding by discussing the claimant's complaints in the context of the complete medical record).

## CONCLUSION

After review of the entire record, and for the reasons stated, this Court finds that the ALJ's denial of DIB was based on substantial evidence and was not erroneous as a matter of law. Accordingly, the ALJ's decision is affirmed. For the reasons stated above, the Court grants Commissioner's motion for judgment on the pleadings (Dkt. No. 8). Plaintiff's motion for judgment on the pleadings is denied (Dkt. No. 9), and Plaintiff's complaint (Dkt. No. 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

**S/Michael A. Telesca**

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED: August 13, 2013
       Rochester, New York